**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOSE FLORES,<br>on behalf of himself and all others<br>similarly situated )<br><br>Plaintiff, )<br>vs. )<br>)<br>EXPRESS SERVICES, INC., and )<br>EXPRESS PERSONNEL - PHILADELPHIA )<br>)<br>Defendants ) | C.A. No.  14-3298<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PRELIMINARY APPROVAL OF**
**CLASS ACTION SETTLEMENT AND NOTICE TO CLASS**

**FRANCIS & MAILMAN, P.C.**
James A. Francis
John Soumilas
David A. Searles
Lauren KW Brennan
Land Title Building, Suite 1902
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

*Attorneys for Plaintiff and the Class*

## TABLE OF CONTENTS

I.   NATURE OF LITIGATION ................................................................2
    A.   History Of The Case ........................................................2

II.  NATURE OF SETTLEMENT ...........................................................4
    A.   The Settlement Class..........................................................4
    B.   Settlement Benefits ...........................................................4
        1.   Practice Changes ....................................................4
        2.   Monetary Compensation .......................................5
        3.   Cost Of Notice And Settlement Administration ..........5
        4.   Service Award For Class Representative...................6
        5.   Attorney's Fees And Costs .....................................6
        6.   Class Notice ..........................................................6

III. THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT
     PURPOSES.......................................................................................7
    A.   The Proposed Settlement Class Meet Rule 23(a)'s Requirements .........8
        1.   Numerosity............................................................8
        2.   Commonality ........................................................8
        3.   Typicality .............................................................10
        4.   Adequacy Of Representation ................................10
    B.   The Proposed Settlement Class Meet Rule 23(b)'s Requirements .......11
        1.   Common Questions Of Law And Fact Predominate Over
             Individual Ones..................................................12
        2.   A Class Action Is The Superior Method For Resolving The Class
             Members' Claims ..............................................12

IV.  ARGUMENT .................................................................................13
    A.   Standard For Preliminary Approval Of A Class Settlement.................13
    B.   The Terms Of The Proposed Settlement Are Fair, Reasonable and Adequate......15

V.   CONCLUSION .............................................................................17

# TABLE OF AUTHORITIES

**CASES**

*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591 (1997).................................................................................................. 7

*Baby Neal v. Casey,*
  43 F.3d 48 (3d Cir. 1994) ........................................................................................ 8

*Bonett v. Education Debt Services, Inc.,*
  No. 01-6528, 2003 WL 21658267 (E.D. Pa. 2003) ................................................ 11

*Cavin v. Home Loan Ct., Inc.,*
  236 F.R.D. 387 (N.D. Ill. 2006)............................................................................... 13

*Chakejian v. Equifax Info. Services, LLC,*
  256 F.R.D. 492 (E.D. Pa. 2009)............................................................................... 11

*Collier v. Montgomery County,*
  192 F.R.D. 176 (E.D. Pa. 2000)......................................................................... 14, 15

*Eisenberg v. Gagnon,*
  766 F.2d 770 (3d Cir. 1985) .................................................................................... 8

*Fisher Bros. v. Cambridge-Lee Indus, Inc.,*
  630 F. Supp. 482 (E.D. Pa. 1985) ........................................................................... 14

*General Telephone Co. of the Southwest v. Falcon,*
  457 U.S. 147 (1982).................................................................................................. 10

*Giddiens v. First Advantage LNS Screening Solutions, Inc.,*
  No. 2:12-cv-2624 (E.D. Pa.) .................................................................................... 11

*Girsh v. Jepson,*
  521 F.2d 153 (3d Cir. 1975) .................................................................................... 14

*Hassine v. Jeffes,*
  846 F.2d 169 (3d Cir. 1998) .................................................................................... 10

*In re Cmty. Bank of N. Va.,*
  418 F.3d 277 (3d Cir. 2005) .................................................................................... 8

*In re Linerboard Antitrust Litig.,*
  292 F.Supp.2d 631 (E.D. Pa. 2003) ........................................................................ 14

*In re Prudential Ins. Co. Am. Sales Practice Litig.,*
  148 F.3d 283 (3d Cir. 1998) ........................................................................ 10, 11, 13

*In re Warfarin Sodium Antitrust Litig.,*
  212 F.R.D. 231 (D. Del. 2002) ................................................................................ 14

*In re: General Motors Truck Litig.,*
  55 F.3d 768 (3d Cir. 1995) .......................................................................... 14, 15, 17

*Jones v. Midland Funding, LLC,* C.A.
  No. 3:08cv802 (RNC) (D. Conn. October 13, 2009)................................................ 11

*Jordan v. Commonwealth Financial Systems, Inc.,*
    237 F.R.D. 132 (E.D. Pa. 2006) ....................................................... 11

*Jose Flores v. Express Services, Inc. and Express Personnel - Philadelphia,*
    Civil Action No. 14-3298 ..................................................................... 3

*LaRocque v. TRS Recovery Services, Inc.,*
    285 F.R.D. 139 (D. Me. 2012) ......................................................... 11

*Lewis v. Curtis,*
    671 F.2d 779 (3d Cir. 1982) ........................................................... 11

*Oslan v. Law Offices of Mitchell N. Kay,*
    232 F. Supp. 436 (E.D. Pa. 2002) ................................................. 13

*Perry v. FleetBoston Financial Corp.,*
    229 F.R.D. 105 (E.D. Pa. 2005) ....................................................... 9

*Radcliffe v. Experian Info. Solutions, Inc.,*
    818 F.3d 537 (9th Cir. 2016) ......................................................... 11

*Rodriguez v. National City Bank,*
    726 F.3d 372 (3d Cir. 2013) ............................................................. 9

*Safeco Ins. Co. v. Burr,*
    551 U.S. 47, 69 (2007) ................................................................... 12

*Sapp v. Experian Info. Solutions,*
    No. 10-4312, 2013 WL 2130956 (E.D. Pa. May 15, 2013) ............. 11

*Serrano v. Sterling Testing Systems, Inc.,*
    711 F. Supp. 2d 402 (E.D. Pa. 2010) ........................................... 11

*Sullivan v. DB Invs., Inc.,*
    667 F.3d 273 (3d Cir. 2011) ............................................................. 8

*Summerfield v. Equifax Info. Services, LCC,*
    264 F.R.D. 133 (D. N.J. 2009) ....................................................... 11

*Wal–Mart Stores, Inc. v. Dukes,*
    131 S.Ct. 2541 (2011) ....................................................................... 9

*Weinberger v. Kendrick,*
    698 F.2d 61 (2d Cir. 1982) ............................................................. 14

*Weiss v. Regal Collections,*
    385 F.3d 337 (3d Cir. 2004) ............................................................. 9

*Weiss v. York Hospital,*
    745 F.2d 786 (3d Cir. 1984) ............................................................. 8

*White v. Experian Info. Solutions,*
    2014 WL 1716154 (C.D. Cal. May 1, 2014) ................................... 11

iii

**STATUTES**

15 U.S.C § 1681o(a) ................................................................................................ 16

15 U.S.C. § 1681b(b)(3) .................................................................................. 2, 4, 9, 12

15 U.S.C. § 1681n(a) ........................................................................................... 15, 16

15 U.S.C. § 1681n(a)(1)(A) .................................................................................... 15

**RULES**

Fed. R. Civ. P. 23(a) ...................................................................................... 8, 11, 13

Fed. R. Civ. P. 23(b) ...................................................................................... 8, 11, 13

Fed. R. Civ. P. 23(b)(3) .................................................................................... 12, 13

Fed. R. Civ. P. 30(b)(6) ............................................................................................. 3

**OTHER Authorities**

MANUAL FOR COMPLEX LITIGATION 4TH, § 21.63 (2004) ........................................ 13

NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2009) ........................................ 13, 14

Plaintiff Jose Flores moves for preliminary approval of the parties' Settlement Agreement in this class action brought under the Fair Credit Reporting Act ("FCRA"), under Fed. R. Civ. P. 23 of the Federal Rules of Civil Procedure and Local Civil Rule 23.1, and to approve the proposed notice to the class. The parties anticipate the proposed notice, if approved, will be mailed to 36,848 class members residing within the Third Circuit.

With the Settlement Agreement[1] (which is attached as Appendix I hereto), Plaintiff also submits the proposed Final Approval Order (Exhibit A to the Settlement Agreement), a proposed Preliminary Approval Order (Exhibit B to Settlement Agreement), a proposed Notice to the Class (Exhibit C to Settlement Agreement) and a Claim Form (Exhibit D to the Settlement Agreement).

The terms of the Settlement Agreement were negotiated vigorously and through zealous advocacy. Class Counsel are experienced consumer class action attorneys who are qualified to evaluate the proposed Settlement Agreement on behalf of the class.

As set forth in more detail below, the outcome of this case represents an unqualified success for the Plaintiff and Settlement Class, and the settlement achieved readily meets the criteria for preliminary approval for several reasons. First, as a result of the lawsuit, Defendants have changed their practices and procedures for notifying applicants about the results of background reports obtained for purposes of employment.

Second, the settlement provides that Defendants will establish a Settlement Fund of $5,750,000.00. The fund will provide automatic, guaranteed payments of $50.00 to each of the 36,848 class members who decide not to file a claim for damages, and up to $2,500.00 each to every class member who opts instead to file a claim for damages. The fund will also be used to

---

[1]     Unless otherwise defined herein, all capitalized terms in this Memorandum have the same meaning as in the Settlement Agreement.

pay the costs of notice and settlement administration, a settlement and service award to the Class Representative, and Class Counsel's fees and expenses.  There will be no reversion of any of the fund to the Defendants.

Third, the stage of the proceedings demonstrates the fairness and non-collusive nature of the settlement.  It was only reached after over twenty-two months of litigation and settlement negotiations.  The parties spent three full days over a many month period of detailed mediation, plus innumerable follow up telephone calls and conferences under the auspices of Carole Katz, Esq., a highly respected private mediator.  See http://www.carolekatz.com/.  It is indisputable that negotiations were conducted in an arms-length manner.

For these reasons, this Court should approve the settlement reached here.

## I.  <u>NATURE OF THE LITIGATION</u>

This is a consumer class action brought under the Fair Credit Reporting Act against Defendants Express Services, Inc. and Express Personnel – Philadelphia ("Defendants"), a staffing agency and user of consumer reports for employment purposes.  Plaintiff's Second Amended Class Action Complaint asserts that Defendants willfully failed to provide the applicants who were the subjects of background reports with notice and copy of the report before taking adverse action against them as required in FCRA section 1681b(b)(3).  Since the filing of this case, Defendants have changed their practices to address the conduct complained of in this litigation.

### A.  <u>History Of The Case</u>

Mr. Flores, on June 9, 2014, filed a Class Action Complaint; on July 24, 2014, filed an Amended Class Action Complaint; and, on October 22, 2014, filed a Second Amended Class Action Complaint against Defendants in the United States District Court for the Eastern District of Pennsylvania, captioned *Jose Flores v. Express Services, Inc. and Express Personnel -*

*Philadelphia*, Civil Action No. 14-3298.  The allegations, on behalf of a class residing within the jurisdiction of the United States Court of Appeals for the Third Circuit, were that Defendants violated the FCRA by failing to provide the required pre-adverse action notice to employees and job applicants, as required by the FCRA, so that they are afforded the opportunity to correct any inaccuracies in background checks before the employer takes adverse action against them. Defendants filed their Answers to the Second Amended Complaint on November 6, 2014.

Following a Rule 16 conference, the Court issued its First Scheduling Order on December 9, 2014 (Doc. 27).  Plaintiff served written discovery on Defendants on December 24, 2014, and scheduled Rule 30(b)(6) depositions of both Defendants for February 25, 2015.

Soon thereafter, the parties discussed the possibility of attempting to mediate a resolution of the case, and agreed to hire Ms. Katz for that purpose.  Pursuant to the parties' joint motion, the Court stayed deadlines pending the outcome of mediation.  Doc. 29.  Defendants provided pre-mediation responses to certain of Plaintiff's discovery requests, and the parties held their first mediation session on May 21, 2015.  That session resulted in some progress but did not resolve the case.  Instead, the parties agreed to resume mediation several months hence. The Court placed the case in the Civil Suspense File on April 1, 2015, pending the outcome of mediation.  Doc. 30.

The parties met again for two more days of mediation on November 10 and 11, 2015.  At the conclusion of the third day, the parties had reached an agreement in principle for the settlement of the case, which was subject to the approval of the Defendants' board of directors.  That board met later in the year.  Subsequently, with the assistance of the mediator, the parties continued negotiating through telephone calls and exchange of written settlement terms and proposals throughout the winter and spring of 2016.

A revised term sheet was signed by the parties in April 2016.  Plaintiff prepared drafts of the settlement agreement and the collateral documents that were exhibits to the agreement.  The parties went back and forth on the settlement terms and eventually produced the final agreement that is attached hereto as Appendix I.

## II.     NATURE OF SETTLEMENT

Representative Plaintiff Flores and Defendants have agreed, subject to this Court's approval, to a settlement of this litigation on a class-wide basis.  The terms of the settlement are set out in the Settlement Agreement attached hereto as Appendix I.  The settlement is fair, reasonable and sound in light of the relevant facts, the applicable law, and the economic, as well as non-economic, value of the settlement to the Class.

### A.     The Settlement Class

The parties have agreed to settle the section 1681b(b)(3) claims of a class of consumers (the "Class") defined as follows:

> All natural persons residing within the jurisdiction of the  United States Court of Appeals for the Third Circuit who (i) beginning two (2) years prior to the filing of the Complaint; (ii) applied for employment with Defendants; (iii) were the subject of a consumer report used by Defendants for employment purposes; (iv) were the subject of an adverse employment action by Defendants; and, (v) were not provided with a copy of the report and/or a written summary of their rights under the FCRA prior to the adverse action.

Settlement Agreement, ¶ 1.5.

### B.     Settlement Benefits

#### 1.     Practice Changes

The Settlement Agreement contains Defendants' express acknowledgement that they have changed their practices to address the conduct that served as the basis of the Plaintiff's claims in this case.  Settlement Agreement, ¶ 2.1.

2.    **Monetary Compensation**

The Settlement Agreement provides that Defendants will establish a Settlement Fund of $5,750,000.00 to be used for monetary compensation to Class Members, for costs of notice and settlement administration, for an individual settlement and service award to the Class Representative and for fees and costs for Class Counsel.  Settlement Agreement, ¶ 6.

The Settlement allocates the sum of one million, eight hundred forty-two thousand, and four hundred dollars ($1,842,400.00) for an Automatic Payment of $50.00 for each Class Member who takes no action upon receiving the notice of the Settlement, without the need to file a claim form.  *Id*. ¶ 6.1(A).

An additional amount of one million, eight hundred thirty, and eight hundred fifty dollars ($1,830,850.00) (the "Damages Claims Fund") is allocated to pay Damages Claims not more than $2,500.00 for each Settlement Class Member who submits a Claim Form. A Settlement Class Member may submit a Claim Form (a) certifying to the best of his or her knowledge, information, and belief that the Settlement Class Member lost or was delayed in obtaining an employment opportunity as a direct result of the conduct that qualifies that Settlement Class Member to be a member of the Settlement Class; and (b) stating the amount of Recoverable Damages[2] claimed. *Id*. ¶ 6.1(B).

3.    **Costs of Notice and Settlement Administration**

All costs of notice relating to the settlement and all necessary and reasonable costs of administering the disbursement of consideration, and other administrative expenses will be paid

---

[2]    "Recoverable Damages" are defined in the Settlement Agreement to mean an amount not in excess of two thousand five hundred dollars ($2,500.00) for damages proven to have been incurred by a Settlement Class Member as a result of the failure of the Defendants to provide such Member with the pre-adverse action notice required by the FCRA.  Settlement Agreement, ¶ 1.23.

out of the Settlement Fund, including, but not limited to, postage charges, printing costs, a telephone assistance program, receiving and processing Claim Forms, reporting to the parties, complying with tax reporting requirements, and all other notice costs and other charges as may be approved by the parties subject to further approval by the Court.  Settlement Agreement, ¶¶ 5.1 – 5.3.

### 4.       Service Award for Class Representative

Subject to court approval, the parties have agreed that the Class Representative will be paid an award of $10,000 by the Defendants, and to which the Defendants will not object, for his individual settlement award and his services in connection with representing the Class.  Settlement Agreement, ¶ 6.3.

### 5.       Attorney's Fees and Costs.

Subject to court approval, Defendants have agreed to pay, and agree not to object or engender objection to, an amount not to exceed one million, nine hundred fourteen thousand, seven hundred fifty dollars ($1,914,750.00) for the combined attorney's fees and costs incurred by Class Counsel in the prosecution of the litigation.  Settlement Agreement, ¶ 6.2.  The amount of attorney's fees and expenses to be paid to Class Counsel was not agreed to by the parties until agreement was reached in principle on the other terms of the Settlement Agreement.  Plaintiff will submit a fee petition ten (10) days prior to the Final Approval Hearing, which will include Plaintiff's detailed request for attorney's fees and costs.

### 6.       Class Notice

The settlement provides for a Settlement Administrator, RSM US LLP, to effectuate the compiling and mailing of the class notice.  Settlement Agreement, ¶¶ 4.2, 5.2.

Within 7 days following Preliminary Approval, Defendants will provide the Settlement Administrator with a list of the names and last known addresses of the Settlement Class Members in readable electronic form. *Id.* Within 14 days after the entry of the Preliminary Approval Order, the Settlement Administrator will mail the Settlement Notice and a Claim Form, subject to any changes made by the Court, to each Class Member at their last known address, as updated by the Settlement Administrator with one round of skip-tracing. *Id.*, ¶ 5.2(B). At the same time, the Settlement Administrator shall establish (a) a website labeled as www.FloresExpressClassAction.Info which will contain, among other things, the Settlement Notice; the Second Amended Complaint; the Defendants' Answers to the Second Amended Complaint; the Settlement Agreement; the Motion for Preliminary Approval of the Settlement; and, the Preliminary Approval Order; and, (b) a toll-free number for Settlement Class members to call with questions. *Id.*, ¶ 5.2(A)(1).

The Settlement Administrator shall receive and process the claims for Recoverable Damages, and comply with all tax reporting requirements, if any, with respect to payments made to Class Members. *Id.*, ¶ 5.2(D), (E).

Not later than 20 days before the Final Approval Hearing, the Settlement Administrator shall file proof of the mailing of the Settlement Class Notices with the Court. *Id.*, Exhibit B, ¶ 7(b).

## III.   THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

In considering the proposed settlement, the first question for the Court is whether a settlement class may be conditionally certified for settlement purposes. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of

Rule 23); *Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 296 (3d Cir. 2011) (*en banc*) ("[B]efore approving a class settlement agreement, a district court first must determine that the requirements for class certification under Rule Fed. R. Civ. P. 23(a) and (b) are met." (internal quotation marks omitted)); *In re Cmty. Bank of N. Va.,* 418 F.3d 277, 300 (3d Cir. 2005) ("[R]egardless of whether a district court certifies a class for trial or for settlement, it must first find that the class satisfies all the requirements of Rule 23.").

The parties have reached a proposed agreement on behalf of the Settlement Class defined above.  In support of their contention that proper and sufficient grounds for class certification exist under Rule 23, the Class Representative would show the following.

### A.    <u>The Proposed Settlement Class Meet Rule 23(a)'s Requirements</u>

#### 1.    <u>Numerosity</u>

In applying this rule, it has consistently been held that joinder is impracticable where the class is composed of hundreds of potential claimants; indeed, impracticability of joinder has often been found where the class is composed of less than 100 members.  *See, e.g., Eisenberg v. Gagnon*, 766 F.2d 770, 785-86 (3d Cir. 1985) (90 class members meets numerosity requirement); *Weiss v. York Hospital,* 745 F.2d 786, 808 (3d Cir. 1984) (92 class members meets the numerosity requirement).

Here, the parties have determined through discovery that the Class consists of 36,848 employment applicants. This is certainly sufficient to establish that joinder is impracticable.

#### 2.    <u>Commonality</u>

A putative class satisfies Rule 23(a)'s commonality requirement if "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir. 1994).  As this Circuit reiterated recently, "that bar is not a high

one.  We have acknowledged commonality to be present even when not all plaintiffs suffered an actual injury, *id.,* when plaintiffs did not bring identical claims, …, and, most dramatically, when some plaintiffs' claims may not have been legally viable, ….  In reaching those conclusions, we explained that the focus of the commonality inquiry is not on the strength of each plaintiff's claim, but instead is "on whether the defendant's conduct was common as to all of the class members." *Rodriguez v. National City Bank*, 726 F.3d 372, 382-83 (3d Cir. 2013) (citations omitted) (reviewing commonality standard in light of *Wal–Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541 (2011), and concluding that while "*Dukes* is an intervening and pointedly clear explication of the law, it did not announce any change in the test for determining commonality." *Rodriguez*, 726 F.3d at 381, n. 2)).

The primary questions, which focuses on the uniform conduct and procedures of the Defendants, are common to the Class.  The main question is whether Defendants willfully and negligently violated section 1681b(b)(3) of the FCRA by uniformly failing to provide job applicants who were the subjects of consumer reports containing adverse information with notice and a copy of the relevant report prior to taking adverse action against them.

The theory of liability for the Settlement Class is precise because it arises from the same standard practices and present the same basic questions that are common to all members of each class.  Cases presenting standardized practices directed at consumers invariably present common predominating issues. *See Perry v. FleetBoston Financial Corp.,* 229 F.R.D. 105 (E.D. Pa. 2005) (finding Rule 23 requirements met in consumer class action and noting cases routinely certified where 'defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents.'" (citations omitted). *See also Weiss v. Regal Collections*, 385 F.3d 337, 344-45 (3d Cir. 2004) (claims arising from standard

collection communications particularly appropriate for class action).

Defendants' practices with respect to the members of the Class was uniform, because it was Defendants' practice to not provide consumers who were the subjects of background reports containing adverse information with notice and a copy of the report prior to taking adverse action, or any time thereafter.  Commonality is thus satisfied.  *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 310 (3d Cir. 1998).

### 3. <u>Typicality</u>

This requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Prudential*, 148 F.3d at 311.  The threshold for establishing typicality is low.  Typicality does not require that the claims of the class members be identical.  Rather, a plaintiff's claims are typical when the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating her personal claims she can reasonably be expected to advance the interests of absent class members.  *See, e.g., General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 156-157 (1982).

The Class Representative is a member of the Settlement Class, has the same interest in resolution of the issues as all other members of the Class and his claims are typical of all members of the Class.  Plaintiff was affected by the Defendants' practice in the same manner as all members of the Class.  These facts, and Plaintiff's claims, are therefore typical of the facts and claims of all other members of the proposed Settlement Class.  *See Hassine v. Jeffes,* 846 F.2d 169, 177 (3d Cir. 1998).

### 4. <u>Adequacy of Representation</u>

A representative plaintiff must be able to provide fair and adequate protection for the

interests of the class.  That protection involves two factors: (a) the representative plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the representative plaintiff must not have interests antagonistic to those of the class.  *See, e.g., In re Prudential*, 148 F.3d at 312; *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982).

Plaintiff here fairly and adequately represents the interests of the Settlement Class.  Mr. Flores has retained qualified and experienced attorneys who have substantial experience in class action and consumer litigation and are qualified to conduct the litigation. The firm of Francis & Mailman, P.C. has been certified to represent classes under the FCRA, as well as other consumer protection laws, in this district and by courts in other districts, and has tried class actions to verdict as well.[3]

Moreover, Plaintiff has no interests that are antagonistic to the interests of the Class, and is unaware of any actual or apparent conflicts of interest between him and the Class.

**B.      The Proposed Settlement Class Meet Rule 23(b)'s Requirements**

In addition to meeting the requirements of Rule 23(a), a money-damages class must satisfy Rule 23(b)(3), namely that (1) "questions of law or fact common to the members of the class

---

[3]      *See White v. Experian Info. Solutions*, 993 F.Supp.2d 1154, 1169, 1172 (C.D. Cal. 2014) (finding Francis & Mailman "FCRA specialists" and appointing firm and its team as interim class counsel over objections from competing group because their team's "credentials and experience [we]re significantly stronger in class action and FCRA litigation."), *aff'd sub nom. Radcliffe v. Experian Info. Solutions, Inc.*, 818 F.3d 537, 548 (9th Cir. 2016); *Sapp v. Experian Info. Solutions*, No. 10-4312, 2013 WL 2130956 (E.D. Pa. May 15, 2013); *LaRocque v. TRS Recovery Services, Inc.*, 285 F.R.D. 139 (D. Me. 2012) (certifying firm of Francis & Mailman as class counsel in consumer class action); *accord, Giddiens v. First Advantage LNS Screening Solutions, Inc.*, No. 2:12-cv-2624 (E.D. Pa.) at Dkt. No. 55 (Jan. 20, 2015 order granting final approval and certifying Francis & Mailman as class counsel); *Serrano v. Sterling Testing Systems, Inc.*, 711 F. Supp. 2d 402, 412 (E.D. Pa. 2010); *Summerfield v. Equifax Info. Services, LCC*, 264 F.R.D. 133 (D. N.J. 2009); *Chakejian v. Equifax Info. Services, LLC*, 256 F.R.D. 492 (E.D. Pa. 2009); *Jones v. Midland Funding, LLC*, C.A. No. 3:08cv802 (RNC) (D. Conn. October 13, 2009); *Jordan v. Commonwealth Financial Systems, Inc.*, 237 F.R.D. 132 (E.D. Pa. 2006); *Bonett v. Education Debt Services, Inc.*, No. 01-6528, 2003 WL 21658267, at *3 (E.D. Pa. 2003).

predominate over any questions affecting only individual members" and, (2) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  The proposed Settlement Class meets these requirements.

### 1.    Common Questions of Law and Fact Predominate Over Individual Ones

Resolution of the common issues of fact and law in this case will not only promote the efficient adjudication of these matters, it will dispose of them entirely.  Plaintiff alleges on behalf of the Class that Defendants failed to comply with section 1681b(b)(3) of the FCRA by taking adverse action against applicants based in whole or in part on information in consumer reports, without first providing them with notice and a copy of the relevant report.  The internal policies and procedures that Defendants followed in notifying applicants about the results of such backgrounds checks – factual issues central to Plaintiff's claims – are generally common to all members of the Settlement Class.

In addition, Plaintiff alleges on behalf of the Class that Defendants' alleged failures to comply with the FCRA were "willful," *i.e.*, that there is no objectively reasonable interpretation of the FCRA, as a matter of law, that would support Defendants' view that it was permissible to completely fail to provide notice to consumers regarding adverse results of backgrounds checks. *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 69 (2007).  These are predominating legal questions common to all members of the Settlement Class.

### 2.    A Class Action is the Superior Method for Resolving the Class Members' Claims

As to superiority, class settlement is the most efficient means of adjudicating the disputes raised here.  Separately litigating the common issues that bind the Settlement Class would be a practical impossibility, even assuming consumers had notice of their claims and it were

economically feasible to pursue these claims on their own.  Where the alternative to a class action

is likely to be no action at all for most of the class members, there is a strong presumption in favor

of a finding of superiority.  *Cavin v. Home Loan Ct., Inc.*, 236 F.R.D. 387, 396 (N.D. Ill. 2006).

Even if just a small fraction of the members of the Settlement Class were to bring individual suits,

the resolution of common issues in a single proceeding here would be infinitely more efficient than

the separate adjudication of individual claims in separate lawsuits across the country.

## IV.   ARGUMENT

### A.   Standards for Preliminary Approval Of A Class Settlement

When a proposed class-wide settlement is reached, it must be submitted to the Court for

approval.  H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2009)

("NEWBERG"); *Oslan v. Law Offices of Mitchell N. Kay*, 232 F. Supp. 436, 439-40 (E.D. Pa. 2002).

Preliminary approval is the first of essentially three steps that comprise the approval procedure for

settlement of a class action.  The second step is the dissemination of notice of the settlement to all

class members.  The third step is a settlement approval or final fairness hearing.  *See* MANUAL FOR

COMPLEX LITIGATION 4TH, § 21.63 (2004), *available at* http://www.fjc.gov ("MANUAL").  While

a settlement class must satisfy each of the requirements of Rule 23(a) and Rule 23(b)(3), "the fact

of settlement is relevant to a determination of whether the proposed Class meets the requirement

imposed by the Rule."  *In re: Prudential Ins. Co. of America Sales Litigation*, 148 F.3d 283, 308-

09 (3d Cir. 1998)).

The question presented on a motion for preliminary approval of a proposed class action

settlement is whether the proposed settlement appears fair and reasonable.  MANUAL at § 21.62.

As this Court has had occasion to rule:

> Such a preliminary determination requires the Court to consider the following
> factors: "(1) the negotiations occurred at arm's length; (2) there was sufficient

13

> discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Id.* (citing 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 11.41, at 11–91 (3d ed. 1992)); *see also In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 254 (D. Del. 2002). If a court concludes, after consideration of those factors, that the settlement should be preliminarily approved, "... an initial presumption of fairness ..." is established. *In re Gen. Motors Corp.,* 55 F.3d at 785

*In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 631, 638 (E.D. Pa. 2003).

The approval of a proposed settlement of a class action is a matter within the broad discretion of the trial court.  Of course, settlements of class actions are favored in the law.  *See In re: General Motors Truck Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).  Preliminary approval does not require the trial court to affirmatively answer the ultimate question of whether a proposed settlement is fair, reasonable and adequate.  That determination is made only after notice of the settlement has been given to the members of the class and after they have been given an opportunity to voice their views of the settlement or be excluded from the class.  *See In re Linerboard Litig.*, 296 F. Supp. 2d 568, 577-78 (E.D. Pa. 2003) (citing factors established in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)).

The question of whether a proposed settlement is fair, reasonable and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "the terms of the compromise with the likely rewards of litigation."  *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *Collier v. Montgomery County*, 192 F.R.D. 176, 184 (E.D. Pa. 2000) (citing factors established in *Girsh*).  Therefore, many courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight.  *See Collier*, 192 F.R.D. at 186; *Fisher Bros. v. Cambridge-Lee Indus, Inc.*, 630 F. Supp. 482, 487-88 (E.D. Pa. 1985).

14

In addition to being substantively reasonable in relation to the risks and likely rewards of litigation, the proposed settlement must be "the result of good faith, arms length negotiations." *Collier*, 192 F.R.D. at 184.  In evaluating this requirement, courts proceed as follows:

> If the proposed settlement appears to be the product of serious informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to Class Representatives or segments of the Class, and falls within the range of possible approval, then the court should direct that notice be given to the Class Members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.

*Id.*  A finding that these factors are present establishes an initial presumption of fairness.  *Id.*; *see also General Motors*, 55 F.3d at 785-86.  Here, the proposed settlement meets these standards.

**B.   The Terms of the Proposed Settlement are Fair, Reasonable and Adequate**

The proposed settlement is reasonable when considering disputed liability and the statutory cap on damages.  These factors demonstrate that the proposed settlement is an excellent result for the Settlement Class.  Actual damages available to a consumer may vary and may defeat class certification, particularly in the employment context where the employer may seek to identify other causes for the denial of employment which could differ for each prospective employee.

Statutory damages for a willful violation of the FCRA are capped at $1,000 per consumer.  15 U.S.C. § 1681n(a)(1)(A).  A consumer may only receive such an award if he proves that a defendant consumer reporting agency willfully (as opposed to negligently) violated the FCRA.  Even if the Representative Plaintiff won his FCRA claims at trial, there is no assurance that the jury would find willfulness, or award an amount to the Class commensurate with the value ensured by this settlement, which guarantees automatic payments of $50.00 to each member of the Class and also provides the option to submit a damage claim for up to $2,500.00.

The amount awarded by a jury or court is by no means certain, given the statutory factors that must be considered in making such an award – frequency and persistence of noncompliance

with the statute; nature of the noncompliance; and, extent to which noncompliance was willful or negligent.  15 U.S.C. § 1681n(a) and § 1681o(a).  Thus, this settlement avoids the litigation risk to the Class and secures tangible and useful relief that may not be obtainable after trial.

The adequacy of the proposed settlement is still more clearly appreciated when considering Defendants' liability defenses and the possibility of the Plaintiff being unable to prove liability. Plaintiff and the Class will need to show that Defendants willfully violated the FCRA.  Defendants have asserted that their actions were not willful under FCRA. The parties obviously also have different views on factual issues.  Winning his case before a jury is by no means certain and Plaintiff has decided that such a risk is unwise in the face of the proposed settlement.

The proposed settlement is the product of serious, informed and non-collusive negotiations. Defendants have continued to deny any wrongdoing or legal liability arising out of the conduct alleged in this action.  Nonetheless, Defendants have concluded that it is desirable that this action be settled in the manner and upon the terms and conditions set forth in the Settlement Agreement to avoid the expense, inconvenience, and burden of further legal proceedings, and the uncertainties of trial and appeals.

The Representative Plaintiff and his counsel recognize the expense and duration of continued litigation, including a trial, in this action against Defendants through possible appeals, which could take several years.  They have also considered the time already invested in this case and the uncertain outcome and risk of litigation.  Representative Plaintiff and his counsel believe that the settlement set forth in the Settlement Agreement confers substantial benefits upon the Settlement Class.  Based upon their evaluation, Representative Plaintiff and his counsel have determined that the settlement is in the best interest of the Settlement Class.

The proposed settlement has no "obvious deficiencies" and falls well within the range for approval.  Defendants' agreement to make significant practice changes addressing the issues outlined in Plaintiff's complaint, and the significant payments to members of the Settlement Class provide valuable benefits.  Clearly, the goal of this litigation, to seek redress for the Class, has been met.

As noted, settlements of class action disputes are favored in the law, to bring finality and to conserve judicial resources.  *General Motors*, 55 F.3d at 783.  Settlement of consumer class actions otherwise involving individual claims for small sums, such as the instant action under the FCRA, are particularly well suited to class settlement.

The settlement does not improperly grant preferential treatment to the Representative Plaintiff or segments of the Class.  The relief provided in the settlement will benefit all members of the Class equally.  The amount payable to the Representative Plaintiff is reasonable in that he has participated in the litigation of this action and rendered substantial services on behalf of absent Class Members.

At the Final Approval Hearing, movant anticipates a final judgment giving effect to the Settlement Agreement and dismissing all claims of any Settlement Class Member who have not been excluded from the Settlement Class.  Upon confirmation of the settlement at the Final Approval Hearing and performance by Defendants of all their obligations under the Settlement Agreement, Defendants will be fully, finally and completely released of all liability for the claims asserted in the litigation and as further described in the Settlement Agreement.

## V.  <u>CONCLUSION</u>

Accordingly, Plaintiff Jose Flores requests that this Court grant preliminary approval of the Settlement Agreement, as set forth in the proposed Order of Preliminary Approval.

Defendants do not contest the requested relief.

Respectfully submitted,

Dated: October 21, 2016

**FRANCIS & MAILMAN, P.C.**

By: *s/ David A. Searles*
James A. Francis
John Soumilas
David A. Searles
Lauren KW Brennan
Land Title Building, Suite 1902
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

*Attorneys for Plaintiff and the Class*

18