```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

```
JOSE FLORES                     :      CIVIL ACTION
                                :
          v.                    :
                                :
EXPRESS SERVICES, INC., et al.  :      NO. 14-3298
```

MEMORANDUM

Bartle, J.                                        March 29, 2017

Before the court is the motion of plaintiff Jose Flores seeking attorneys' fees and reimbursement of expenses for work performed in connection with the class settlement in this action.

Plaintiff Jose Flores, on behalf of himself and a class of similarly situated individuals, sued defendants Express Services, Inc. and Express Personnel - Philadelphia for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, et seq. In his Second Amended Complaint, Flores has alleged that defendants, staffing agencies and users of consumer reports for employment purposes, willfully failed to provide applicants who were the subjects of background reports with notice and a copy of the report before taking adverse action against them, in violation of 15 U.S.C. § 1681b(b)(3).

On October 28, 2016, the court preliminarily approved the class Settlement Agreement, pending a final approval hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

See Doc. # 39.  The court required notice to be given to Class Members and scheduled a final hearing for March 9, 2017.

On February 28, 2017, Flores filed a motion for final approval of class action settlement.  A final approval hearing was held on March 9, 2017.  In a separate order following the hearing, the court has approved the class settlement and has found it to be fair, reasonable, and adequate.

The Settlement Agreement provides that defendants will establish a Settlement Fund of $5,750,000 to be used for compensation to Class Members, costs of settlement administration, a $10,000 service award to the individual Class Representative, Jose Flores, and fees and costs for class counsel.

Of this Settlement Fund, an Automatic Payment Fund of $1,842,400 is allocated for compensation of $50 to each to Class Member who does not file a claim for damages.  As of February 17, 2017, class counsel estimated that there are approximately 32,748 Class Members set to receive automatic payments of $50 each.  The Settlement Agreement also contains a Damages Claims Fund of $1,830,850, which will provide a payment of up to $2,500 for each Class Member who submits a claim for damages.  The Settlement Administrator had received 2,333 Damage Claims as of February 17, 2017, which translates to a minimum payment of $785 per Class Member seeking damages.

A cy pres provision for funds not otherwise expended is included with the following recipients: 50% to the Salvation Army, 25% to the Veterans' Multi-Service Center; and 25% to HAP Veterans' Project.

Finally, plaintiff seeks from the Settlement Fund $1,895,362.33 in attorneys' fees and $19,387.67 in costs for a total of $1,914,750.

I.

Rule 23(h) of the Federal Rules of Civil Procedure provides, in relevant part, that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The FCRA authorizes the award of attorneys' fees. See 15 U.S.C. § 1681n(a)(3). Attorneys' fees are calculated using one of two methods: the percentage-of-recovery method ("POR method") or the lodestar method. Sullivan v. DB Investments, Inc., 667 F.3d 273, 330 (3d Cir. 2011). The POR method applies a "certain percentage to the settlement fund, while [the lodestar method] multiples the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services." Id. (quoting In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 300 (3d Cir. 2005)) (internal citations and quotations omitted). The POR method is favored where class counsel's efforts have achieved a common fund because it allows

the court to award fees in a manner that rewards counsel for success and penalizes counsel for failure or waste. Rite Aid, 396 F.3d at 300. The lodestar method, which multiplies the number of hours reasonably expended on the case by counsel's reasonable hourly rate, is commonly used in statutory fee-shifting cases and "where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." In re Diet Drugs, 582 F.3d 524, 540-41 (3d Cir. 2009). The lodestar method is also used to cross check the reasonableness of the POR method fee award. Sullivan, 667 F.3d at 330; Rite Aid, 396 F.3d at 294; In re AT&T Corp., 455 F.3d 160, 164 (3d Cir. 2006).

Here, we have a hybrid case. A hybrid case exists when there is both a common fund and a fee-shifting statute. With a hybrid case, the court has discretion to employ either the POR method or the lodestar method. See Brytus v. Spang & Co., 203 F.3d 238, 243 (3d Cir. 2000); In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 737 n. 20 (3d Cir. 2001). The court should cross-check its fee calculation with the unused method to determine that the award is reasonable. See Sullivan, 667 F.3d at 330.

In calculating the fee using the POR method, our Court of Appeals has instructed that there are ten factors that should be considered. Id.; Gunter v. Ridgewood Energy Corp., 223 F.3d

190 (3d Cir. 1990); In re Prudential Ins. Co. Sales Practices, 148 F.3d 283, 332 (3d Cir. 1998).  These factors, identified in Gunter and Prudential, are:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, . . . (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of the settlement.

Diet Drugs, 582 F.3d at 541 (citing Gunter, 223 F.3d at 195 n.1 and Prudential, 148 F.3d at 336-40) (internal citations omitted).  We are not required to apply the factors formulaically.  Nonetheless, it is important that we "evaluate what class counsel actually did and how it benefitted the class."  Prudential, 148 F.3d at 332; Rite Aid, 396 F.3d at 301.

                              II.

We begin by determining which method we will use in calculating the award for attorneys' fees.  The FCRA is a fee-shifting statute, and the Settlement Agreement creates a common fund.  See 15 U.S.C. § 1681(n)(3).  Thus, we have a

hybrid situation in which we have discretion to employ the fee calculating method that we deem appropriate. See Brytus, 203 F.3d at 243; Cendant Corp., 243 F.3d at 737 n. 20. We will calculate the award of attorneys' fees using the POR method and cross-check it with the lodestar method.

As described in the Settlement Agreement and memoranda supporting preliminary and final approval, defendants have provided a Settlement Fund of $5,750,000 for the benefit of Class Member claimants. From the Settlement Fund, $3,683,250 is allocated for compensation to Class Members. Flores has requested expenses of $19,387.67 and attorneys' fees of $1,895,362.33, for a total of $1,914,750.

Plaintiff's request for attorney's fees is reasonable. First, the size of the fund created and the number of beneficiaries support the fee request. The class size totals 35,081. The Class Members will receive significant benefits as a result of the common fund: Class Members who do not opt out of the Settlement Agreement and do not submit a claim for damages will receive an automatic payment of $50, while Class Members who do not opt out of the Settlement Agreement and do submit a claim for damages will receive a payment up to $2,500.

Second, there have been no objections to the Settlement Agreement, and only five Class Members have opted out of it.

The third consideration, the skill and efficiency of counsel, is apparent here and favors approval of the fees. Counsel has achieved a significantly favorable result on behalf of plaintiffs at the expense of the inherent risk that accompanies undertaking a contingency fee action. See In re Ikon Office Solutions Inc., Sec. Litig., 194 F.R.D. 166, 194 (E.D. Pa. May 9, 2000). Additionally, counsel has extensive experience in consumer class action litigation and has been certified to represent a consumer class both now and many times in the past.

The fourth consideration, the complexity and duration of the litigation, supports approval. The litigation commenced on June 9, 2014. Before extensive motions practice took place, the case was placed in civil suspense less than one year after the complaint was filed in order to allow for mediation.[1] It remained in civil suspense for mediation purposes from April 1, 2015 until October 28, 2016. Counsel for the class has advised the court that during this time, written discovery, three days of mediation, and lengthy settlement discussions took place. Less than three years after the complaint was filed, Flores' motion for final approval of the settlement was filed on

---

1. Defendants filed a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. # 14). Plaintiff filed a second amended complaint on October 22, 2014 and the motion of defendants was deemed moot (Docs. ## 19 and 20).

February 28, 2017.  Flores brought suit under a provision of the FCRA that required a showing of willfulness on the part of the defendant.  15 U.S.C. § 1681b(b)(3).  This liability obstacle presents a layer of complexity that Flores would have to overcome at trial in order to succeed and a contention that defendants would have undoubtedly contested.  These factors weigh in favor of approval of the fee.

The fifth factor, risk on nonpayment, does not weigh for or against approval as counsel undertook the litigation on a contingent fee basis.

In the next consideration, we review the amount of time consumed by the litigation.  A total of 677.5 hours of work has been devoted on behalf of the class over the course of 32 months.  This amount of time has secured a common fund of $5,750,000 for the benefit of Class Member claimants.  This consideration weighs in favor of approval.

In the seventh factor, we are asked to consider awards of attorneys' requests for fees in in similar common fund class action settlements.  Here, our consideration must be based on the size of the settlement.  <u>Cendant Corp.</u>, 243 F.3d at 736.  Counsel has requested attorneys' fees of $1,895,362.33, which is 32.96% of the total Settlement Fund of $5,750,000.  This constitutes a multiplier of 4.6 of counsel's lodestar.  Upon consideration of percentages granted in similar class action

settlements, 32.96% of the total common fund is within the range of awards that support approval.  See Boone v. City of Philadelphia, 668 F.Supp. 2d 693, 714 (E.D. Pa. Nov. 3, 2009); see also Williams v. Aramark Sports, LLC, 2011 WL 4018205 at *10 (E.D. Pa. Sept. 9, 2011); see also Skeen v. BMW of North America, LLC, 2016 WL 4033969 at *32 (D. N.J. July 26, 2016); see also Rite Aid, 146 F.Supp. at 735.

The eighth factor, the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, supports approval.  Only class counsel, and no other group or agency, has performed work on behalf of the class.

The ninth factor, which considers the percentage fee that would have been negotiated had the case been subject to a contingent fee agreement, is a non-factor.

The final consideration weighs in favor of approval.  Here we consider any innovative terms of the settlement.  As a result of the Settlement Agreement, defendants have changed their notification policies and practices that served as the basis of Flores' claims, even though the FCRA does not provide for injunctive relief when sought by private parties.

The considerations set forth above support the approval of counsel's request for a fee award of $1,895,362.33.

III.

We now turn to the lodestar method to cross-check the percentage fee award to confirm that it is reasonable. See Prudential, 148 F.3d at 333.  The lodestar method requires us to "multipl[y] the number of hours reasonably worked . . . by a reasonable hourly billing rate for such services[.]" Rite Aid, 396 F.3d at 305.  "The multiplier is a device that attempts to account for the contingent nature of risk involved in a particular case and the quality of the attorneys' work." Id. at 305-06 (citing Report of the Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237, 243 (1985)).  In determining the multiplier, we "blen[d] billing rates that approximate the fee structure of all the attorneys who worked on the matter."  Id. at 306.

Class counsel, as noted above, has expended 677.5 hours on behalf of the class.  This number reflects the combination of work performed by attorneys and work performed by paralegals.  The hourly rates of attorneys who worked on this case range from $725 per hour to $225 per hour, while the hourly rate of the paralegals is $180 per hour.  We multiply the number of hours worked by each individual by his or her hourly rate to calculate the individual fees.  We next add together all of those individual fees.  The result is the lodestar amount, $411,153.

The counsel fee request of $1,895,362.33 results in a multiplier of 4.6, that is a requested fee which is 4.6 times the lodestar amount. This multiplier is reasonable based on the following considerations: (1) Counsel undertook this matter on a contingency basis with risk of non-recovery; (2) No objections were made by defendants or any Class Member to the fee requested; (3) Counsel demonstrated expertise and efficiency; (4) The Settlement Agreement provides a substantial monetary benefit achieved for the Class Members; and (5) Defendants have revised their relevant policies and practices as a result of the Settlement Agreement. This revision of policies and practices strongly benefits the public-at-large.

The expenses sought after by Flores total $19,387.67. Based on the documentation provided by Flores, we determine this sum is also reasonable.

IV.

In sum, we will award Flores attorneys' fees in the amount of $1,895,362.33 and expenses in the amount of $19,387.67, for a total award to Flores of $1,914,750.